DAKOTA TITLE & ESCROW CO., APPELLEE, V. WORLD-WIDE STEEL SYSTEMS, INC., A NEBRASKA CORPORATION, ET AL., APPELLEES, EVERLASTING GOLDEN RULE CHURCH, A MISSOURI CORPORATION, APPELLANT.
471 N.W.2d 430

Filed July 5, 1991.   No. 89-202.

Michael M. O'Brien, of Matthews & Cannon, P.C., for appellant.

Michael McCormack, of McCormack, Cooney, Mooney, Hillman & Elder, for appellee Dakota Title.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

The Everlasting Golden Rule Church, a Missouri nonprofit corporation, appeals a default judgment entered against it in favor of Dakota Title & Escrow Co. because Golden Rule's corporate president failed to appear for a deposition.

In its defense, Golden Rule argues that its president, Kelly Green, was not served with a subpoena and that, in any event, he was only a nonparty witness. Because Dakota could have raised the underlying question involved in this case in prior litigation between the same parties, see *Everlasting Golden Rule Ch. v. Dakota Title*, 230 Neb. 590, 432 N.W.2d 803 (1988) (*Everlasting I*), this action is barred by the doctrine of res judicata. Therefore, we vacate the default judgment entered by the district court for Sarpy County and remand the cause to that court with direction to dismiss the action.

The history of the dispute between the parties is found in *Everlasting I, supra*, which reads in part:

On August 31, 1983, the Everlasting Golden Rule Church (plaintiff), the defendant, World-Wide Steel Systems, Inc., and SWN Investment entered into an escrow agreement in reference to the purchase of real property described as "Lot 1, SWN Investments #2, a subdivision as surveyed, platted and recorded, Sarpy County, Nebraska." The pertinent portions of the agreement provided as follows:

"A. Seller [Golden Rule] shall place the sum of

$16,000.00 in an escrow account to be held by the Escrow Agent [Dakota]; which sum represents an amount sufficient to protect the Buyer [SWN Investment] against a possible judgment lien against said property resulting from an action involving [Golden Rule] and the property described herein, which action is filed at Doc. 54, No. 187 of the District Court of Sarpy County, Nebraska, and is entitled 'Clifford D. Gullett, Plaintiff, vs. World-Wide Steel Systems, Inc., a Nebraska Corporation; The Everlasting Golden Rule Church, a Missouri Corporation, and Kelly Green, Defendants'.

"B. That said sum shall be held pending resolution of said lawsuit, and upon resolution shall be distributed pursuant to the court's order."

Clifford D. Gullett, the plaintiff referred to in the escrow agreement, had obtained a judgment against World-Wide in an Iowa court, which, together with interest, amounted to $13,808.12 (apparently, the judgment was for $11,530.48 and accumulated interest to reach the sum of $13,808.12) as of April 19, 1983. On that date, Gullett filed a petition in equity in the district court for Sarpy County against World-Wide, the church, and Kelly Green. That case may be found at docket 54, page 187, and is the action referred to in the escrow agreement. The petition alleged generally that World-Wide is a mere facade for the personal dealings of Green and that in an effort to hinder his creditors, Green transferred the property (the property described in the escrow agreement) from World-Wide to the church with the intent to hinder, delay, and defraud the creditors of World-Wide and Green. The petition further prayed that the court annul and set aside the transfer and that judgment be awarded [Gullett] against Green in the sum of $13,808.12, plus interest from March 1, 1983.

On April 16, 1984, Gullett filed another petition in the district court for Sarpy County seeking to register the Iowa judgment referred to above. In that action, found at docket 59, page 4, Gullett's motion for summary judgment in the amount of $11,530.48 plus interest of

$4,003.58 as of August 30, 1984, was sustained and judgment entered accordingly. Gullett's attorney, on September 18, 1984, filed a praecipe with the clerk of the district court for Sarpy County for a "writ of execution to levy upon all personal property of World-Wide Steel Systems, Inc., or specifically, any funds held by Dakota Title & Escrow Company, of World-Wide Steel Systems, Inc. under an Escrow Agreement dated August 31, 1983, to satisfy Plaintiff's judgment in the amount of $15,517.17."

On the same day, Gullett's attorney also filed a praecipe for a "writ of execution and levy upon all funds held by Dakota Title & Escrow Company Company [sic], of Kelly Green, under an Escrow Agreement dated August 31, 1983, to satisfy plaintiff's judgment in the amount of $300.00."

On September 18, 1984, the clerk of the district court issued the writs of execution as requested. One writ on its face showed that it pertained to the case of *Gullett v. World-Wide Steel Systems, Inc.*, at docket 59, page 4, and recited a judgment due of $15,517.17 plus costs in the amount of $88.36. The other writ pertained to the case of *Gullett v. World-Wide Steel Systems, Inc. et al.*, at docket 54, page 187 (the case referred to in the escrow agreement), and recited an amount of $300 due on a judgment, together with $224.98 in costs.

Both writs were served on [Dakota] on September 21, 1984, by a deputy sheriff. The sum of $15,948.14, covering judgment, costs, service, and return, was collected on the writ in docket 59, page 4; and $51.86, covering a portion of the judgment, costs, service, and return, was collected on the writ in docket 54, page 187. These amounts were paid by the deputy sheriff into the district court for Sarpy County. The sum of $16,000 was then paid over to Gullett, and a satisfaction of judgment for the second lawsuit (not the one involved in the escrow agreement) was filed on September 26, 1984.

Gullett, now having recovered all moneys to which he was entitled, albeit in a roundabout fashion, moved to

dismiss the first lawsuit (the one involved in the escrow agreement). An order of dismissal in docket 54, page 187, was entered by the court on January 22, 1985. At the same time, the court ordered that "any monies now on deposit with Dakota Title and Escrow Company, or received by Dakota Title and Escrow Company in the future pursuant to an escrow agreement dated August 31, 1983 . . . should be paid to Kelly Green, President of the Everlasting Golden Rule Church."

Dakota Title, having already paid out the money on deposit pursuant to the writs of execution, refused to pay Green and the church. On February 8, 1985, the church filed [*Everlasting I*] in the district court for Douglas County against Dakota Title for breach of contract. The petition alleged that Dakota violated the covenants of the escrow agreement by paying out the $16,000 to a creditor of World-Wide.

Generally, Dakota Title's defense was that it had paid out the money to the sheriff in accordance with the writs of execution.

*Everlasting I, supra* at 591-93, 432 N.W.2d at 804-05.

The district court for Douglas County granted summary judgment in favor of Golden Rule. On December 16, 1988, this court affirmed the judgment of the trial court, which held that the case referred to in the smaller writ was actually the case referred to in the escrow agreement. Payment of the $16,000 was therefore not made in accordance with a proper court order of the district court for Sarpy County for the action filed at docket 54, page 187, cited in the agreement.

Prior to this court's affirmance in *Everlasting I*, Dakota filed this declaratory judgment action in the district court for Sarpy County on January 6, 1988. Dakota sought to "pierce the corporate veil" of Golden Rule and World-Wide Steel Systems, Inc., as to the transaction leading up to the judgment in *Everlasting I*. Dakota wanted to show that Golden Rule and World-Wide were alter egos of one another, so that the Gullett action against World-Wide was the same as an action against Golden Rule. In essence, Dakota is arguing that it is subrogated to the rights of Clifford Gullett and therefore became a creditor

of World-Wide and that because World-Wide is the alter ego of Golden Rule, Dakota is also a creditor of Golden Rule.

The district court for Sarpy County first entered a default judgment against World-Wide in June 1988 for failing to file an answer. World-Wide was a Nebraska corporation which was dissolved in 1986 for failure to pay taxes.

A subpoena was issued for Green, and service was attempted at his last known address in Sarpy County. The subpoena was returned marked "not found." The record indicates Green disappeared and resided in Mexico for $1 \frac{1}{2}$ to 2 years prior to January 1989, when Green was ordered to appear. Following the failure of Green, as president of Golden Rule, to appear for his deposition as ordered by the court, the answer of Golden Rule was stricken and default judgment was entered against Golden Rule and in favor of Dakota as a sanction, pursuant to Neb. Ct. R. of Discovery 37(b)(2) (rev. 1989).

In entering the default judgments against Golden Rule and World-Wide, the district court found that they were alter egos of each other and that the Gullett judgment against World-Wide was also a judgment against Golden Rule. In essence, the court found that the transfer of the real property from World-Wide to the church was an effort to defraud World-Wide's creditors.

Dakota then filed a petition for further relief to determine who was entitled to the proceeds of the supersedeas bond filed in *Everlasting I*, which bond was held by Rudy Tesar, clerk of the district court for Douglas County. Tesar and Golden Rule's attorneys were added as defendants to this action in an effort to resolve the interests in the bond.

This court need not reach the merits of the appeal in this case because the claim of Dakota is precluded under the doctrine of res judicata. Res judicata bars relitigation not only of those matters actually litigated, but also of those which might have been litigated in an earlier proceeding. *Blazek v. City of Omaha*, 232 Neb. 562, 441 N.W.2d 205 (1989); *Pflasterer v. Koliopoulos*, 213 Neb. 330, 328 N.W.2d 789 (1983). Under res judicata, "[a] defendant . . . may not relitigate a defense, which was available but not raised in a prior action, by making it the basis of a claim in a subsequent action against the original

plaintiff which if successful would nullify the initial judgment." *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1234 (7th Cir. 1986). See, *Blazek, supra* (original defendant could have raised questions of ordinance validity as a defense to the relief requested and obtained by the original plaintiff in the prior action); *Island v. Board*, 69 Ohio St. 2d 241, 431 N.E.2d 672 (1982) (if an original defendant previously neglected to assert a particular defense, that defendant is precluded from raising it subsequently by virtue of the existence of the judgment rendered in the former action). It is clear that Dakota could have raised the defense of Golden Rule and World-Wide being alter egos of each other in *Everlasting I*. This court takes judicial notice of the petition in *Everlasting I*, filed on February 8, 1985, and Dakota's answer, filed on August 13, 1985, both of which are contained in the transcript filed in this court in *Everlasting I*. (The Supreme Court may examine and take judicial notice of its own proceedings and judgment where certain aspects of the controversy have previously been considered and determined, in cases which are interwoven and interdependent. *State v. Meis*, 233 Neb. 355, 445 N.W.2d 610 (1989). Judicial notice of facts reflected in the court's records is subject to the doctrine of res judicata. See *Gottsch v. Bank of Stapleton*, 235 Neb. 816, 458 N.W.2d 443 (1990).) In its answer, Dakota acknowledged an awareness of Kelly Green as president of both Golden Rule and World-Wide. Dakota alleged in its defense in the earlier case that the corporations were partners in the purchase of the real estate which gave rise to the escrow agreement. More importantly, the petition in the Gullett action, filed April 19, 1983, and specifically described in the escrow agreement, "alleged generally that World-Wide is a mere facade for the personal dealings of Green and that in an effort to hinder his creditors, Green transferred the property (the property described in the escrow agreement) from World-Wide to the church [Golden Rule] with the intent to hinder, delay, and defraud the creditors of World-Wide and Green." *Everlasting I, supra* at 592, 432 N.W.2d at 804.

An appellate court is not precluded from raising the issue of res judicata sua sponte, although it is infrequently done. See, *Nash v. Bowen*, 869 F.2d 675 (2d Cir. 1989) (even though a trial

court does not rule on a question of res judicata, an appellate court is not precluded from doing so); *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556 (5th Cir. 1983) (where a cause of action could have been brought in a prior suit but was not because of unexplained dilatoriness, appellate court can properly raise question of res judicata sua sponte); *Taxation With Representation of Wash. v. Regan*, 676 F.2d 715 (D.C. Cir. 1982) (MacKinnon, J., dissenting), *rev'd on other grounds* 461 U.S. 540, 103 S. Ct. 1997, 76 L. Ed. 2d 129 (1983) (appellate court could have raised issue of res judicata requiring remand but instead chose to address merits); *Robertson v. Interstate Securities Company*, 435 F.2d 784 (8th Cir. 1971) (appellate court may raise question of res judicata sua sponte); *Wilson v. United States*, 166 F.2d 527 (8th Cir. 1948) (record disclosed two prior orders overruling identical motions from which no appeal was taken; thus appellate court applied res judicata). See, also, *Hinkle v. Tri-State Transit, Inc.*, 21 Ill. App. 3d 134, 315 N.E.2d 289 (1974) (issue on appeal barred by collateral estoppel after settlement between the parties while case was on appeal; order to show cause why appeal should not be dismissed was issued). But cf. *Carbonell v. Louisiana Dept. of Health & Human Resources*, 772 F.2d 185 (5th Cir. 1985) (appellate court should only raise question of res judicata for the first time on appeal when affirming the trial court decision below *or* in situations in which all relevant data and legal records are before the court and comity, continuity in the law, or essential justice demand its use). Res judicata is grounded upon (1) public policy and necessity to end litigation and (2) the hardship imposed upon a person by being vexed twice for the same cause of action. *Farmers State Bank v. Germer*, 231 Neb. 572, 437 N.W.2d 463 (1989). Allowing a court to raise the issue of res judicata sua sponte is fully consistent with the policy of avoiding unnecessary judicial waste. *United States v. Sioux Nation of Indians*, 448 U.S. 371, 100 S. Ct. 2716, 65 L. Ed. 2d 844 (1980) (Rehnquist, J., dissenting).

Since the claims raised here could have been raised in *Everlasting I, supra*, where Dakota had a full and fair opportunity to litigate the action, we vacate the default judgment entered by the district court for Sarpy County and

remand the cause to the trial court with direction to dismiss the cause.

REVERSED AND REMANDED WITH DIRECTION TO DISMISS.

GRANT, J., not participating.